**KENNETH A. PAUL**
ATTORNEY AT LAW

TRINITY BUILDING
111 BROADWAY - SUITE 701
NEW YORK, N.Y. 10006
TELEPHONE: (212) 587-8000
FAX: (212) 374-1506

kpaul@kennethpaulesq.com

December 3, 2013

<u>Via ECF and Regular Mail</u>
Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

      Re:    <u>United States v. Eleuterio Granados-Hernandez</u>
                 11 Cr. 297(S-5)(KAM)

Dear Judge Matsumoto:

      My client is presently scheduled to be sentenced on January 7, 2014. Please accept this letter as a sentencing submission on behalf of Mr. Granados-Hernandez. He has received and reviewed his Presentence Investigation Report ("PSR"), with the assistance of a Spanish interpreter, and other than objections previously submitted by letter to the probation officer dated April 17, 2013, and as fully set forth herein has no additional objections to the PSR.

      Mr. Eleuterio Granados-Hernandez was charged in a twenty-two count superseding indictment and ultimately on August 1, 2012, pled guilty before Your Honor to a single-count superseding indictment. This guilty plea was pursuant to a plea agreement entered into with the government and stipulated by the parties that the applicable total offense level is 38 and the sentencing guidelines range would therefore be at 235 – 293 months. This was based both upon the offense to which Mr. Granados-Hernandez pleaded guilty and his having no criminal history. It also was the result of an agreed upon "global disposition adjustment" that was to reduce my client's adjusted offense level by one additional level to the three level reduction for acceptance of responsibility, pursuant to Guidelines §3E1.1(a) and (b).

      The PSR has concluded that my client's total offense level is 41 instead of the agreed upon offense level of 38. The PSR does modify this conclusion by stating that the "Government and Defense agree to an additional 1-level reduction in the advisory guideline range if the defendants pled guilty by August 1, 2012". This would reduce the total offense level, according to the PSR, to 40 with a Guideline range of 292 to 365 months. (PSR, p. 30, ¶181). Consequently, this would

Honorable Kiyo A. Matsumoto
December 3, 2013
Page Two

result in a guideline offense level that was two levels higher than what was agreed to and set forth in the plea agreement between the parties.

There are a number of reasons for the difference in the Guideline calculations between the plea agreement and the PSR. In the plea agreement, my client had accepted responsibility for his conduct toward five victims. These victims are identified as Jane Doe #2, #3, #5, #11 and #12. For each of these victims, depending on the specific elements of the offense and the application of the Guidelines as applied to each, there is a guideline calculation and an adjusted offense level. It is the application of these elements, or the related guideline enhancements, where there is a difference between the estimate as set forth in the plea agreement and the PSR. For example, the PSR applies a two-level enhancement for all but one of the victim(s) claiming they were vulnerable, as per Guideline 3A1.1. This enhancement is applied to all but Jane Doe #11 and this is not set forth as to any of the victims in the plea agreement. (PSR, pp. 20-22, ¶¶96, 103, 110, 123).

Additionally, I submit the PSR has miscalculated the multi-count analysis. While it is correct that there should be a multi-count application, pursuant to §2G1.1(d)(1) and §3D1.4 of the Guidelines, the PSR has incorrectly increased the offense level by 5. (PSR, pp. 22-23, ¶¶127-136). In that there are five victims referred to in my client's plea agreement who were supposedly involved in my client's admitted criminal offense activity of sex trafficking and therefore a total of 5 units, there should however be an increase in the offense level of only 4, not 5, levels as stated in the PSR. This miscalculation of the multi-count analysis in the PSR for the different victims was however correctly set forth in the plea agreement with an increase of 4 levels to the highest offense level.

If the Court were to adopt and apply the Guidelines and the enhancements as set forth in the PSR, the total offense level is 41 after acceptance of responsibility. If there is an additional 1-level reduction for the Global Plea Adjustment, it is reduced to 40. Additionally, if the Court further reduces this by one-level due to the miscalculation of the Multi-Count Analysis then the total offense level becomes 39 with a range of 262-327 months.

Even after the multi-count analysis is correctly applied, there still remains a difference in the total offense level guideline calculation between the PSR and the plea agreement. This is partially due to probation concluding that for one of

Honorable Kiyo A. Matsumoto
December 3, 2013
Page Three

the victims, namely Jane Doe #12, the adjusted offense level is 39 whereas in the plea agreement there is an adjusted offense level of 37. This is due to a two-level enhancement in the PSR for this victim being a vulnerable victim and a three-level enhancement for this victim having sustaining serious and life threatening injuries. This results in an increase of the adjusted offense level to 39 from a base offense level of 30.

      While my client has accepted responsibility for participating in the sex trafficking of Jane Doe #12 by apparently assisting Jaime Granados-Rendon in housing her, it is clear from the PSR that this victim was recruited and physically abused by Jaime Granados-Rendon, not Eleuterio Granados-Hernandez. In reviewing the PSR there is no mention of my client's participation involving Jane Doe #12 other than assisting in the decision of where she was to be housed and thereafter working as a prostitute. All references to physical abuse against this victim were based upon the actions of my client's co-defendant, Jaime Granados-Rendon. It cannot therefore be argued that there is any evidence of my client having abused, or even witnessed any such physical abuse against Jane Doe #12 and therefore any such enhancement(s) should not apply as to this victim in relation to my client's conduct. (PSR, pp. 13-15, ¶¶61-72).

      Similarly, there should not be a two-level enhancement applied against my client for Jane Doe #12 being a vulnerable victim. As the government noted in their sentencing submission, dated March 12, 2013, regarding a co-defendant, Irma Rodriguez-Yanez, this enhancement should not apply where the defendant was not responsible for recruiting, selecting, or targeting the victim. I concur with the government's argument in their submission where they state that the vulnerable victim enhancement requires that the defendant "knew or should have known of the victim's unusual vulnerability" and that the defendant "selected" the victim at least in part based on that vulnerability. (Guidelines §3A1.1, Applic. Note 2.)(Govt. Submission, See ECF Document #97).

      There is no evidence that Eleuterio Granados-Hernandez was involved in the "selecting" or "targeting" of Jane Doe #12. Clearly, as to this particular victim there does not appear to be any evidence that my client played any role beyond his participating in the sex trafficking of this victim along with the others. Therefore, if Your Honor does not find that these enhancements apply as to my client in relation to Jane Doe #12, particularly for her being a vulnerable victim and for her sustaining of an injury between serious and life threatening, then the adjusted offense level for this victim is 34. Such an adjusted offense level of 34 would be five levels lower than the highest adjusted offense level of 39, as per Jane Doe #3, and therefore when applying the multi-count adjustment there should only

be an increase in the offense level, counting for all of these victims, of a three-level increase and not the five-levels as stated in the PSR. With this adjustment my client's total adjusted offense level becomes 38 with a sentencing range of 235 to 293 months. (Guidelines §3D1.4(b)). This is the same total adjusted offense level as set forth in the plea agreement between the parties.

      As this Court is very well aware, the sentencing guidelines are now advisory, post *United States v. Booker,* 125 S. Ct. 738 (2005), and are but one of five factors to be considered in determining a sentence. District courts are nevertheless directed to determine the applicable guidelines range and consider it along with all of the factors listed in 18 U.S.C. §3553(a). *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005). The Supreme Court's opinion in *Gall v. United States,* 128 S. Ct. 586 (2007), "rejected an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and further "rejected the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." According to the *Gall* case, the sentencing guidelines provide a sentencing court with a "starting point and the initial benchmark". The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. The Court of Appeals cannot overrule a district court's sentence that is based upon the consideration of the §3553(a) factors along with a reasonable and rationale determination in light of the record in the particular case. The Supreme Court in *Kimbrough v. United States,* 552 U.S. 85, 128 S. Ct. 558 (2007), rejected an attempt to give special weight to the sentencing guidelines. These cases clearly state that the district courts are only required to look to the advisory guidelines as they should also look to all the other factors as set forth in 18 U.S.C. §3553(a).

      Mr. Granados-Hernandez has accepted full responsibility for his conduct and feels great remorse for the acts he has committed. Given the difficulties in his life, and the impact that his incarceration will have upon his family, a sentence that is a variance and lower than his advisory Guidelines range is appropriate. Such a sentence would not be in conflict with the sentences that have been imposed on other defendants in similar cases. *See United States v. Parris,* 573 F. Supp. 2d 744, 754 (E.D.N.Y. 2008)(comparing sentences in cases similar to that case to arrive at a just sentence under §3553(a)).

      A sentence below the advisory Guidelines that would be closer to the mandatory minimum of fifteen years would not be inconsistent with other recent sentences for similar conduct. For example, in *United States v. Robinson,* 09 Cr. 794 (E.D.N.Y.), the defendant Devon Robinson was convicted after trial (unlike Eleuterio

Honorable Kiyo A. Matsumoto
December 3, 2013
Page Five

Granados-Hernandez, who pleaded guilty and admitted his offense) of two counts of violating 18 U.S.C. §1591(b)(2). At Robinson's sentencing in January 2011, Judge Gleeson imposed a term of imprisonment of 180 months, thereby sentencing the defendant to the mandatory minimum and the total amount of imprisonment I propose here.

Similarly, in *United States v. Angel Cortez-Granados*, 11 Cr. 657 E.D.N.Y., the defendant, Angel Cortez-Granados, pleaded guilty to a similar offense as this one and was similarly charged. Additionally, I believe his case was directly related to this indictment. He too was sentenced to 180 months by Judge Townes.

A sentence of 180 months, the mandatory minimum that my client is facing for this offense, would be a sentence that is not inconsistent with the results of other cases and would certainly constitute a significant punishment. My client would be separated from his family and his home country for a very long time. Such a sentence would also serve as a signal to others that the laws must be obeyed and will be enforced with severe penalties to those who violate them.

As noted in the PSR, Mr. Eleuterio Granados-Hernandez was born in Tlaxcala, Mexico, to Jose Granados and Elena Hernandez. Both of his parents are suffering physically. His mother is partially paralyzed and his father has severe heart problems. Unfortunately, my client has not had any communications with his parents since his arrest. (PSR. p. 24, ¶142).

Mr. Eleuterio Granados-Hernandez was raised under very severe economic circumstances. Though there were no issues with his mother, the family "often went hungry, and that at times, they ate food from the trash". Apparently, the father was not involved in my client's life in that he worked long hours and was never there for him and so there never was anything close to a true father-son relationship. (PSR, p. 24, ¶143).

The PSR refers to an incident where my client was sexually abused at the age of 6. Since I was present during the PSR interview, I can attest to how difficult and painful it was for my client to attempt to discuss this horrible experience with the probation officer. The person who abused him as a child was his nephew and apparently this happened on more than one occasion. As noted in the PSR, my client has never even attempted to talk about this horrible experience to anyone, including his own family. (PSR, p. 24, ¶144).

Mr. Granados-Hernandez has several children from three different relationships. He has one child from an eleven-year relationship with a Ms. Marvi

Honorable Kiyo A. Matsumoto
December 3, 2013
Page Six

Rodriguez Gonzalez, that ended in 2004. The child's name is Esmeralda, age 8, and according to my client she is struggling emotionally since his arrest, refusing to go to school. (PSR, p. 25, ¶147).

My client has a child from a second relationship that occurred during the years from 2005 to 2006. This relationship with Ms. Olivia Salasar resulted in a child, age 5, named Jomar Granados Hernandez who my client has also maintained a close relationship. (PSR, p. 25, ¶148).

Additionally, two children were born from a continuing relationship with Ms. Maria Guadalupe. My client and Ms. Guadalupe have been involved since 2006 and have two young children, ages 3 and 6, together. He has a very close relationship with Ms. Guadalupe and their two children. As with all of his children, my client had attempted to continue to support them financially, even if he was able to do this only with minimal assistance. (PSR, p. 25, ¶149).

I have enclosed several letters addressed to the Court on behalf of my client. These letters are from both relatives and friends all expressing their support for Eleuterio Granados-Hernandez. I trust these letters will assist Your Honor in a better understanding of my client.

Respectfully, I would request this Court in considering all of the facts and circumstances surrounding this case as well as his personal and family history, that after applying all of the factors to be considered in imposing a sentence pursuant to 18 U.S.C. §3553(a), that a sentence resulting in a downward variance from the applicable sentencing guidelines range would be appropriate and "sufficient, but not greater than necessary".

Thank you for your consideration.

Respectfully,

Kenneth A. Paul

KAP:ng
Encls.
Cc:     AUSA Soumya Dayananda          (Via ECF)

        Ms. Angelica Deniz
        U.S. Probation Officer          (Via ECF and Regular Mail)