

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

TM:SD

February 20, 2014

<u>By ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      Re:    United States v. Eleuterio Granados-Hernandez
              <u>Criminal Docket No. 11-297 (S-5) (KAM)</u>

Dear Judge Matsumoto:

      On August 1, 2012, the defendant Eleuterio Granados-Hernandez pleaded guilty pursuant to a plea agreement to count one of a superseding information, charging him with conspiring to commit sex trafficking, in violation of 18 U.S.C. § 1591(a)(1). The defendant is scheduled to be sentenced by Your Honor on March 7, 2014.

      The government respectfully submits this response to object to the Pre-Sentencing Report ("PSR") and to respond to the defendant's sentencing submission, dated December 3, 2013.

I.      <u>Factual Background</u>

      As the PSR describes in some detail, the defendant participated in a sex trafficking conspiracy from October 2000 to April 2011. (PSR ¶¶ 1-26). Over approximately ten years, the defendant began romantic relationships with numerous females in Mexico and then lured them to the United States with the false promise of a better life. (PSR ¶ 1). Each of these victims were transported by the defendant with the intent that she would engage in prostitution. (PSR ¶ 4). Once in the United States, the defendant forced victims into prostitution by threats, coercion and violence. <u>Id</u>. For each of the victims, the defendant, and his co-conspirators, kept all of the proceeds from the victims' prostitution earnings. (PSR ¶ 4).

      As part of his plea agreement, the defendant pled guilty to sex trafficking Jane Doe #2, #3, #5, #11 and #12. <u>See</u> plea agreement ¶ 2. The defendant's conduct towards each

of these victims showed the same pattern of criminal conduct and abuse.  For example, in 2001, the defendant met Jane Doe #2 in Puebla, Mexico.  (PSR ¶ 7).  The defendant and Jane Doe #2 began a romantic relationship and shortly thereafter, she moved in with the defendant's family in Tenancingo, Mexico.  Id.  The defendant then convinced Jane Doe #2 to travel to the United States.  Soon after her arrival to New York, the defendant insisted that Jane Doe #2 work as a prostitute.  Id.  While working for the defendant, Jane Doe #2 saw 15 to 18 clients per day.  Id.  Notably, after two years of working as a prostitute in New York, Jane Doe #2 returned to Mexico to give birth to the defendant's child.  Id.  The defendant then arranged for her to be smuggled back to the United States to continue to work as a prostitute. Id.

Similarly, the defendant recruited Jane Doe #3 in 2003 and moved her into his family's house in Tenancingo where she was not allowed to telephone her family or friends. (PSR ¶10).  In 2003, the defendant smuggled Jane Doe # 3 into the United States and soon after forced her into prostitution.  Id.  Significantly, Jane Doe #3 worked for the defendant for approximately six years and stated that the defendant would beat her and threaten her often.  Id.  In 2008, after the defendant beat Jane Doe #3 with a telephone wire, she escaped.  (PSR ¶ 16).

In 2009, the defendant met 17 year-old Jane Doe #5 in Puebla, Mexico.  (PSR ¶ 22).  Similar to his conduct with Jane Doe #2 and Jane Doe #3, the defendant and Jane Doe #5 became romantically involved and she immediately moved in with the defendant's family in Tenancingo, Mexico.  Id.  In May 2009, shortly after Jane Doe #5 turned 18, she and the defendant illegally entered the United States.  (PSR ¶ 23).  Three months after her arrival to New York, the defendant insisted that Jane Doe #5 work as a prostitute.  (PSR ¶ 11).  When Jane Doe #5 refused, the defendant slapped her several times.  (PSR ¶ 25)  Jane Doe #5, fearing more violence, felt that she had no choice and worked for the defendant as a prostitute until 2010. (PSR ¶ 128).

In 2005, the defendant met Jane Doe #11 when she was 15 years old.  (PSR ¶ 57). After they became romantically involved, the defendant told Jane Doe #11 that he had family in the United States that they should visit.  Id.  Once in the Bronx, New York,  the defendant told Jane Doe #11 that she had to work as a prostitute to repay the smuggling debt. (PSR ¶ 57). Although she initially refused, Jane Doe #11 at the age of 16, agreed to prostitute for the defendant.  Id.  In 2007, Jane Doe #11 gave birth to the defendant's child in Mexico.  (PSR ¶ 58). Soon after the birth, she was sent back to the United States to continue her work as a prostitute. Id.  Notably, the defendant was extremely physically abusive towards Jane Doe #11 throughout their relationship.  (PSR ¶ 60).

2

On April 13, as part of an ongoing investigation into the Granados Sex Trafficking organization, Homeland Security Investigation agents arrested the defendant in McAllen, Texas, along with Jane Doe #7. (PSR ¶ 78).

II.   Objections to the Pre-Sentence Report

In the plea agreement, the defendant's United States Sentencing Guidelines ("Guidelines") range was estimated to be 235 to 293 months' imprisonment. See plea agreement ¶ 2. The United States Probation Department, however, calculated that the applicable guidelines range is 324 to 405 months imprisonment. (PSR ¶ 168). [1] The disparity between the estimated Guidelines range in the plea agreement and the Guidelines calculation in the PSR is based, in part, on the fact that the PSR included a three-level enhancement for Jane Doe #12's sustaining a serious and life threatening injury. (PSR ¶ 122). The government objects to the application of this enhancement first, because the defendant himself did not use physical force against Jane Doe #12, and the evidence does not demonstrate that he was present when his co-defendant Jaime Granados-Hernandez physically assaulted Jane Doe #12. Second, any injury sustained by Jane Doe #12 was not "serious or life threatening" as that term is defined in the Guidelines. Accordingly, the three-level enhancement for permanent life threatening bodily injury as to Jane Doe #12 should not be applied to this defendant.

In addition, the PSR afforded a two-level enhancement for the defendant's recruitment of Jane Doe #12 as a vulnerable victim pursuant to U.S.S.G. § 3A1.1. The government concurs with the defendant that he was not involved in the recruitment of Jane Doe #12. Indeed, Jane Doe #12 was recruited by co-defendant Jaime Granados-Hernandez. Moreover, based on the facts of this case, the government cannot prove that the remaining victims, Jane Doe #2, #3, #5 and #11 qualify as "vulnerable victims" under U.S.S.G. § 3A1.1

III.  Discussion

The defendant argues that because of the defendant's personal and family history he should be sentenced to the statutory minimum of 180 months, which is below the advisory Guidelines range. See Sentencing Memorandum, ("Memorandum") p. 1, December 3, 2013. Notably, however, none of the circumstances of the defendant's family, which include growing up in poor economic circumstances distinguish his offense from the typical case. Indeed, the

---

[1] The government and defendant agree that the PSR mistakenly included a 5 level multi-count adjustment pursuant to § 2G1.1(d)(1) and § 3D1.4 of the Guidelines, rather than an increase of 4 levels.

3

defendant is similarly situated to all defendants who engage in criminal activity, in part, out of financial necessity.  See, e.g., United States v. Vera Ramos, 296 Fed. Appx. 201, 203-04 (2d Cir. 2008) (affirming Guidelines sentence despite defendant's "difficult upbringing" and "very substantial family responsibilities" and noting district court's observation that such circumstances are "almost universal" among defendants in similar cases).

   Moreover, while the defendant's childhood experience of sexual abuse is sympathetic, it is not a relevant ground for a downward departure.  Under U.S.S.G. § 5H1.3, the conditions of a defendant's childhood are only relevant to the extent that the abuse suffered by a defendant was sufficient to impair the defendant's mental and emotional condition, thereby triggering consideration  See United States v. Rivera, 192 F. 3d 81, 85 (2d Cir. 1999) (holding that district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense).  Here, the defendant has failed to show any causation between his childhood trauma and the commission of the extremely serious crimes he pleaded guilty to before your Honor.  Accordingly, a departure based on U.S.S.G. § 5H1.3 is not warranted.  Since such a departure is not warranted, and courts are not to consider a defendant's "disadvantaged upbringing" pursuant to U.S.S.G. § 5H1.12, the defendant's request for a departure on this basis is without merit and should be denied.

   In addition, the defendant argues that a sentence of fifteen years would "not be inconsistent with other recent sentences for similar conduct." Memorandum, p. 4.  The defendant argues that the sentences in United States v. Robinson, 09-CR-794 (JG) and United States v. Angel Cortez-Granados, 11-CR-657 (SLT) are similar to the instant case.  The defendant is wrong.  First, in Robinson, the defendant was convicted following a jury trial of two counts of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591.  The evidence at trial established that the defendant was the pimp of an underage minor.  While the defendant had been initially charged with trafficking two victims, Judge Gleeson only considered one victim for purposes of sentencing.  Moreover, Robinson's criminal conduct involved a domestic sex trafficking scheme compared to this defendant's recruitment of multiple women and girls in Mexico and luring them to the United States.  Second, while Cortez-Granados involved a similar scheme as the instant case, Cortez-Granados was responsible for the trafficking of two victims.  Here, the defendant pleaded guilty to trafficking five victims from Mexico to the United States with the intent to force them into prostitution.  Moreover, the defendant's use of violence toward his victims differentiates him from the defendants in Robinson and Cortez-Granados.

4

IV.	Conclusion

In sum, the defendant's criminal conduct merits a sentence that reflects the seriousness of the offense and deters criminal conduct.  See 18 U.S.C.§ 3553(a).  The government respectfully submits that the Court should impose a sentence within the applicable Guidelines range of 235 to 293 months incarceration.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:	 _____
Soumya Dayananda
Assistant U.S. Attorney
(718) 254-7996

CC: Clerk of the Court (KAM) (By ECF)
    Ken Paul, Esq.  (By ECF)

5